Thank you. How far did you travel today? I came from the northern suburbs of Chicago. We appreciate your effort and I'm glad you came to Staggers. I wouldn't miss it, your honor. As an administrative matter, Justice McCavitt is unable to be here today, but she will be listening to the oral arguments and we will not be making a decision until we conference the case. Very good. May it please the court, my name is Joshua Kutnick and I represent John McCavitt. Your honors, this court should suppress the evidence in this matter because a person has a reasonable expectation of privacy in an exact duplicate of a computer hard drive. The state may not continue to search a copy of a lawfully seized hard drive for an undetermined amount of time. An officer's reliance on a nine-month-old search warning is objectively unreasonable and the good faith exception should not apply in this matter. Your honors, I want to focus primarily on the search and seizure issue in this case because it is the most egregious violation that we have here. It also would be dispositive of the matter had it been correctly decided in the trial court and that is what we are asking this court to do. This has been a long, arduous case and dates are important. So right off the bat I want to go through just a few dates to give us a time frame of what we are talking about here. On July 17, 2013, police officers executed a search warrant on the defendant's home. They recovered a computer. On March 19, 2014, the defendant was acquitted of the charges that involved that warrant. At that time, the defendant requested the court for an order to return his property. That was never decided. It was not granted. It was not denied. Was it set for a hearing by defense counsel? It was not. On the very next day after the acquittal on the case that is not charged here. Do you have the date that the motion to return the property was filed? I know you said, I'm just trying to write the dates down. You said March 19 he was acquitted. When did you file the motion? It was not me, your honor. However, I believe it was the same date and I think it was an oral motion if I'm not mistaken. Was there ever a written motion? Your honor, without reviewing the record, I don't recall. It would be included in the record. We have the record. We'll look into that. So, right on the date of acquittal, the next day, the Peoria Police Department initiates an internal affairs investigation. Your honors are aware by reading the brief that the defendant in this matter was a Peoria police officer. The very next day, March 21, 2014, Detective Thehan, the lead investigative officer in this matter, obtained a copy of the hard drive. I will refer to it as the N-case file. The reason it's referred to as an N-case file, I'm sure your honors know, is that there's a program that's a forensic computer program called N-case. Okay. E-N-C-A-S-E. Correct. E-N, capital C-A-S-E. And it does several things. But primarily, as it relates to this case, it creates a mirror image of the hard drive so they can leave the original in the vault and not touch it so it can maintain its evidentiary value. Makes a lot of sense. So you've got the acquittal. He gets the hard drive. This is part of an internal investigation. At this point, I ask your honors to ask this question. What is preventing the officer from seeking a warrant at that point? Absolutely nothing. A warrant to search the hard drive that's in evidence. Is that right? Am I following your argument? When you say in evidence, your honor, I guess I... Well, he was acquitted. Correct. But there's 30 days in which people can file trial motions or whatever, so the judgment is kind of open-ended for 30 days. Normally, evidence isn't returned within that 30-day window. Correct. Normally. So if I understand correctly, then what the officer did is he walked into the evidence room. Is that what you're saying? And pulled the hard drive off and then made a copy? No, it's a little bit different. Factually, I don't know how much of a difference it makes, but I'll certainly tell your honor how it worked. Okay. There's an investigator, Avery, of the Illinois State Police Department, that he was initially in possession of the N-case file. He had made the original copy. When? Oh, the date of the search warrant execution, July of 2013. So the N-case file existed in 2013 and nobody created it after the acquittal? Correct. Did the oral motion to return property include all copies of the hard drive maintained on N-case? It certainly showed that. Okay. I don't know the answer to your question. Okay, so we'll look at the record then. Please proceed. I don't mean to interject your arguments. So the timeline, I'll just quickly get through it. He gets the N-case file. This is a different investigation. That investigation had been completed already. The client had been acquitted. The detective feed him is investigating something completely different now. So he takes that evidence that was used in the first case. He's investigating it for something totally different at this point. And he finds two images of suspected child pornography. It's at that point, after that, he seeks an additional warrant for the N-case file. He does a complete search and he finds all of the other evidence which was later used to prosecute this case. I hope that that clarified the timeline a little bit. You did. However, the point is that from the time that the charges are actually filed in this case to the time that that hard drive was seized is about nine months. 258 days is my count. Now, the first major question that this court needs to address, and this is a question of great legal importance across this country, and I was so surprised in my research to not have found extensive case law on whether or not a person has a reasonable expectation of privacy in the copy of his hard drive. And the first case that I want to point your honors to is Riley v. California, U.S. Supreme Court from 2014. Chief Justice Roberts was discussing the cell phone case and whether or not police require a search warrant before going into and looking at the contents of a cell phone. It's a great case to read. It's very interesting. It talks generally about the fact that our computers and our phones, and our phones are just little small computers, they now protect our most sensitive information. Back when the Fourth Amendment was written, it was file cabinets and papers and closets and drawers. Now it's your phone. Now it's your computer. That has everything important in your life in it. We use them for texting, emailing, banking, shopping, taking and storing personal photos. We FaceTime with our children and our parents and grandparents. We use them for work and for fun, for monitoring our personal health information. We use them for navigation, where we go, our actions. And of course, some of us still use them to talk to people. But the point of Riley, and then later the U.S. v. Carpenter case in 2018, Justice Roberts again speaks to the reasonable and legitimate expectation of privacy in our locations. So in that case, it was about self-site tower locations. But what I'm pointing out to this court is that the trend going all the way to the U.S. Supreme Court is protection of our personal privacy rights in the context of technology. That is where the law is going. So how does all this technology affect our common law development of search and seizure? Well, I think that the courts have been using the existing jurisprudence to shed light on what we do with this technology. And of course, the Carpenter case and the Riley case, they both go through the original underpinnings of those privacy interests and then relate them to the phone. I think Chief Justice Roberts actually says, you know, it used to be your house that had everything in it. That was your most important stuff. But now your phone has even more in it than your house. Because you don't keep all of necessarily your banking records or your other old long-term files, your location. You don't keep that in your house. That's remote off somewhere in your phone or in the Internet, in the cloud. So basically, I argue, in the State's argument that we don't have a reasonable expectation of privacy in that copy, that should not stand. Because even if McCabot had a diminished expectation of privacy in the fact that the drive had been seized, he still did not have a reasonable belief that it would continue to be searched nine months later. I also point to the Ganias case, G-A-N-I-A-S, the Second Circuit in 2016. The reason I point to that, Your Honors, is that it really discusses N-Case. It talks about it in detail. It talks about what N-Case is. And the Second Circuit conclusively found that a person has a reasonable expectation of privacy in an N-Case file that was made from their hard drive. The N-Case is an investigative tool that allows investigators to view the digital information, as I said, without damaging the original. The purpose is laudable. And it would be ironic if the State were permitted to use this lawful tool to circumvent the Fourth Amendment by saying, hey, listen, it's a copy, so we can search it as long as we want. Think about the conclusions that that would go to, Your Honors. It would mean that the police could endlessly search any copy that they had made of our personal hard drives. And that is not what the Fourth Amendment is about. That is an unreasonable search. Your Honors, the State, in their brief, goes through the Pittman factors as to why he does not have a reasonable expectation of privacy. I address that at length in my brief, and I don't think that I need to go through each of the factors, unless Your Honors want me to. But suffice it to say that the Pittman analysis is not the best way to analyze whether a person has a reasonable expectation of privacy in data. It is really more applicable to the home, physical objects, automobiles, things of that nature. American society's pervasive use of digital information is now so ingrained in our culture and way of living that there's a reasonable expectation of privacy in our digital information that has a source outside of the Fourth Amendment. And this is what Minnesota v. Carter, which is also the U.S. Supreme Court, dictates in determining whether or not there is this reasonable expectation. Is there something outside of Amendment 4 that tells us that this is reasonable, that tells us this is important? And what it is, is what I've discussed here, is the pervasive use and how technology has now messed with our lives. I want to jump straight to the good faith argument. Detective Feehan did not act in good faith when he was searching the drive. He was relying on that warrant that had been obtained and executed nine months previously. And the state has conceded in their brief that that warrant was no good. It was invalid. So now the question for this court is, was Officer Feehan's search reasonable in relying on an invalid warrant? The answer is no. It had been executed previously, it was nine months old, and the defendant had already been acquitted. Officer Feehan's actions were calculated deliberately to circumvent Mr. McCabe's Fourth Amendment rights. He used the guise of an internal affairs investigation to get around the warrant requirement. And when he got into that drive and he sees these two images of suspected child pornography, he says to himself, Oops, I better go get a warrant. And that is the proof that he was not acting in good faith. He says that he didn't think he even needed a warrant. He specifically states, I didn't believe I needed one. So how is it, he's really operating with no warrant whatsoever. Because he didn't think he needed one. So his reliance on that warrant is completely unreasonable. He says, it's very interesting to look at Detective Feehan's testimony in the motions suppressed. He says that, well no, I didn't. When asked if he obtained a warrant for the end case file, when he received it, he said no, because of case law that I was aware of, I did not. Didn't believe I needed one. That's record page 33. He's showing right there that he is not acting reasonably. He's a veteran computer technology investigator. He should know, if he wants to be cautious, which he talks about later, he wants to be safe. He should know that he should have gotten that second warrant prior to his opening the end case file. Your Honor, this is a case of extreme importance because it has far reaching effects. First of all, the reasonable exploitation of privacy. Second, whether an officer can, whether this officer's actions were objectively unreasonable. And I think, I argue that any person who looks at the facts, the course of his investigation, would find that his viewing of that hard drive was objectively unreasonable. Counselor, your time is up. Thank you, Your Honor. You're welcome. Mr. Nicolosi, when you're ready. Thank you. Good morning, Your Honor. Good morning. Counselor, Your Honor, the State would ask this Court to affirm to trial the court's denial of defendant's willingness to press, because, number one, the defendant did not have a reasonable expectation of privacy, and he didn't have a copy of his hard drive. And number two, regardless of good faith that the people submitted, if there was an error here, the State would submit that the detective was operating under a reasonable, good faith belief that he was acting lawfully in searching this copy of the hard drive. The defense counsel argues that this type of information, this type of property, is different than the type of property that is typically discussed in case law going back decades. And as a result, that we shouldn't be focusing on factors in cases such as the Supreme Court's decision in Pitman regarding whether or not the defendant possesses a reasonable expectation of privacy. The State disagrees. This is certainly, you know, the physical copy of the hard drive itself is obviously not what we're just talking about. We're talking about the information in the hard drive. The data. You're talking about the data contained in the hard drive. Sure, yeah. How does that change? Say that again. How does that change the rules here? I don't think it should change the rules. Counsel was talking about things like your phone and locations and things on the cloud. I think this is different than that, because this is all the data that is contained on a hard drive. It's not a fluid amount of information. This is an actual tangible item, and the data inside is tangible as well. So I think this is different. I think this is closer to a physical piece of property, like, you know, someone's purse or someone's car or something like that. I think it's very similar. The data itself. Yes, Your Honor. Well, yeah, I feel like the data inside the. . . I mean, the issue is intangible to me. I mean, I can't lock my mind around. . . I think, Your Honor, I think Judge. . . it was either Judge Pearl or Judge Brown. I'm getting confused. I think it was Pearl, not even Brown, who compared it to an actual photograph that, let's say, in the investigation in the first case, the case that started in 2013, if the officers would have taken a photograph of, let's say, the defendant's office in his house, put that in the case file, let's say the case proceeds, the defendant is acquitted like he was, and then the next day, Detective Feehan calls Detective Avery and says, hey, can I have a picture, a copy of that picture that you took of the defendant's office and put in the case file, and Avery gave it to him. And then Feehan was looking at, let's say, this photograph as opposed to the encased file, and Detective Feehan saw something in this photograph that maybe they missed before and that triggered another case, such as the case that was triggered by looking at the case file. I think that, you know, that's data. That photograph is data, just like everything that is in the encased file. It's probably made up of millions of photographs, even if it's just a screenshot of a website or a picture or a download or search item. I think that's all data in a physical sense. Even though it's in the encased file, there's lots of them. There's how many, 16,000 files or whatever the prosecutor mentioned, things like that. If you break them down, they're all individual photos, just like a Polaroid that could have been in the encased file. So the people submit that these are comparable items, comparable tangible pieces of property. And people would submit that the factors really favor, strongly favor, the fact that the defendant didn't have any expectation of privacy in this copy of a copy. In the first case, in the criminal sexual assault case, this hard drive was already, the copy of the hard drive was already searched. As the judge noted in this case, when denying the motion to suppress, the judge commented that the fact that this had already been reviewed, already seized, copied, and reviewed, significantly reduced any expectation of privacy that a defendant had. And like the prosecutor argued below it and the state argued below it in our brief, that this case is similar to the Burnett case, the federal case, where pursuant to an arrest, the defendant's purse was seized and searched, and then it was searched later on, and they found more incriminating evidence. The court said, oh, a new warrant was not needed to resurf this item, this purse, which was lawfully obtained with the law. And the people would submit, just as we argued, extensively in our brief, that this is, again, similar. This is all the property, and this has already been searched, and the researching it didn't need a special agreement to do so. Again, and going back to those Pitman factors, the defendant never owned this copy. He never had a copy of this hard drive. It was made lawfully in the first case against the defendant, and that was re-copied. The defendant didn't have the ability to control or exclude any others from using the copy. Again, this is just like any other evidence in an officer's case file, like a picture or a drawing or you name it. Again, we're just comparing property. And the people submit that the trial judge below observed that and probably ruled that there was no expectation of privacy in this copy. The people submit that that decision should be affirmed. If this court finds that there wasn't, or that the defendant did have a reasonable expectation of privacy in this copy, that the good faith exception does apply here as an exception to the warrant requirement. Detective Feenan testified he believed that he did not need a new warrant to search this item again because he was looking for an unidentified victim relating to the first case, some information he had based on that investigation. Was the unidentified victim an adult or a child? I don't know the answer to that. And I think, Your Honor, I don't think it matters because I think it was clear based on the detective's behavior in this case that he wasn't looking for the child pornography at all. He was conducting an internal investigation on the charges that resulted in the acquittal. Yes, yes. And he was continuing based on some information he had learned from an analysis of the defendant's phone and his email that there was an unidentified victim, so he wanted to go back into this copy of the hard drive and look for that person while he was looking. As part of the investigation. As part of, yes. And he stumbled upon some of what he thought was child pornography. He immediately stopped his investigation at that point and got the warrant. As I argued in my brief, I think that... 2013 charges did not involve any sexual assault against a child or child pornography. No, no, it did not. As far as I understand it. Is the search warrant part of the record? Do you know? I don't believe it was. Is there a transcript of the hearing and a motion to suppress the record? Yes, in this case, yes. Thank you. Yes. So, as I argued in my brief, the whole purpose of the exclusionary rule is to deter Fourth Amendment violations, future Fourth Amendment violations. And if an officer is acting in an objectively reasonable good faith belief that he or she is acting legally,  and I think Detective Feehan's behavior here shows that he was acting in a good faith belief that he was investigating lawfully. Because, again, he stopped his investigation immediately when he saw this supposed child pornography. Again, that wasn't what he was looking for. And the people would submit that if he was not acting in a good faith belief, he would have kept going, kept looking and kept researching for whatever he could find. But I think it's clear that he wanted to do the right thing. As he testified to him in that motion to suppress hearing, he stopped and got the new warrant out of extra caution, I think was the phrase he used. But I think it clearly shows that he was not trying to circumvent the defendant's rights. He was trying to, especially because of the child pornography, he stopped immediately. He did what he thought he should do to cover all bases. And he ended up getting the warrant and went back in. Can you tell me if the two photographs that were observed once the NCASE file was opened after the acquittal, did those two photographs result in criminal charges? And if you don't know, that's fine. I don't think I know the answer to that one. Because I know he went back in and obviously patrolled more evidence. But I don't remember about the initial two. But nevertheless, the initial two that he observed were certainly sufficient for him to be able to- Establish probable cause for the search warrant. Yes. So with that, I have concluded. If there are any other questions about this issue, about the application of privacy, or the good faith exception, or any of the other issues the defendant raised, I'd be happy to answer. Your argument about good faith revolves around his internal investigation. And talk to me some more about that. Well, Your Honor, Timothy and his testimony was- It was almost kind of a- It was an internal investigation, but it was kind of a hybrid, because he knew from his research or the department's research that there had been an unidentified victim based on first the criminal sexual assault matter that had not been identified. So he was- They were going in partly as an internal investigation, and partly as his search for this other unidentified person. Which again, he had reason to believe that person existed. And that's why he went through the copy of the hard drive. Again, not the actual hard drive. He never actually looked in the hard drive. Just looked in the copy. Is there any other questions? I do have a- It's not a direct- No. This is out now. I don't know, Counsel. I don't know anything about it. It was recently released. Yes. Okay. Thank you. Counsel, could we have a moment? I'm sorry, Your Honor. I didn't mean to speak out of turn. No, no, no. It's fine. We're not normally so informal that if it didn't meet with our approval, we would have let you know. I'm sorry for outbursting. Apology not necessary. Into your questions. Just briefly, I think I have a lot of answers to a lot of the questions that you did ask of my opponent. The other victim that he was searching for, Your Honor, was not a child. There was no suspicion of any kind of child abuse or child assault or child contact whatsoever. There was actually a different crime that Officer Peehan was investigating, and he was not involved because it was- Do you question his good faith in looking at the in-case file to identify somebody that was unidentified in the first trial? Without a warrant? Yes. At that date? Yes. The two photos that you did find that gave him pause as potentially child pornography, were those photographs used as part of the 2014 criminal prosecution? I don't know if those two specific photographs were used, but I would agree that those two photographs created the probable cause to be used to obtain a second warrant. Did they involve victims that were named in the indictment of criminal information that was filed in 2014? No. Absolutely not. It had nothing to do with it. The 2014 charges were not based on photographs of the victims depicted in the two photos seen in the in-case file? Absolutely unrelated completely. Okay. And I don't want to go outside the record. No, no, no. What my difficulty is here, and I don't want to jump on you too badly, are you private counsel or queer? Private. The statement of facts in your brief is pretty skeletal, and I think that was the reason you had to go through the timeline for us. Normally a statement of facts would summarize the testimony presented to Judge Brown during the motion to suppress. And so in preparing for this case, I didn't have a summary of the facts of the record from you.  So that's why I'm struggling a little bit here, but I promise I will look at the record. I just wanted to point out that I believe that when I got into my argument is when I really started to highlight those facts more, and I didn't want to repeat them too much, which is the reason why I kind of reserved some of it for that. All right. I understand. I want to point, Your Honor, to Officer Feehan's testimony, though, in the motion to suppress, which is highly, I think it's what we're all looking at here, and it begins on R-28, and it's quite brief. But I think that that will take you right to the question and the answer to whether or not he was acting in good faith. I wanted to point out... And you cited that R-28 in your argument on Issue 1? Oh, R-28. I'm just telling you because R-28... You're asking us to glean this information from the record when you didn't cite to it in your analysis. If I'm incorrect, correct. I specifically cited to it in my brief. And so one of the quotes that I think is really telling, and counsel talked about it, and Your Honor's asked about did he request the end case file pursuant to the internal investigation. I think, Justice Slayton, you asked that question. And his answer was, and I'm quoting here from R-32, line 8. The question was, you requested that the end case based on the formal internal police investigation. Answer, yes and no. Yes, in the fact that we were doing the formal, that's the internal investigation, but in the back of my mind, I knew there was other victims that could be identified during the formal that would turn criminal. So he shows his hand here. Even, let's just say for a second that he didn't need anything regarding the formal investigation, but he had a hunch that he was going to find criminal activity. A hunch is not probable cause. I want to, the photograph example that counsel argues, because that's really important, and I thought about it quite a lot. A photograph taken during the execution of a warrant is not the same as an end case file. A photograph is taken from a particular vantage point at a particular time. An end case file is an exact bit-by-bit duplicate, which is completely different than a photograph. And this case is far more similar to the People v. Carter case from this court in 2016. In that case, the police executed a search warrant. They found whatever they found. They went outside and they talked to somebody, a different witness, and that witness said, hey, they've got a gun in the couch. The police then went back, knocked on the door, said, hey, we forgot something here. We want to come back in and search again. They searched, they found the gun, and this court suppressed that second search. That is much more likely, much more applicable to the situation here than this case of a photograph. The last thing is that the court below, in its order, Judge Brown's order on the motion to suppress specifically, cites no case law in support of his position. It scoured that opinion for case law in support of that position. And the reason why he doesn't have any case law in support of it is because there is not. He, basically this argument that, he says he has a reduced expectation of privacy. That doesn't mean he has no expectation of privacy. The case law talks about how reduced expectations are still expectations. Officer Feehan was, he wanted to find something on McCavick. McCavick had been acquitted. He waits until that acquittal, he gets that hard drive, he goes into... Whoa, whoa, whoa, whoa, whoa, whoa. It's not the facts that you argued earlier. He didn't get that hard drive. I'm sorry, I misspoke. The end of the case file. Okay. You are correct, Your Honor. I'm sorry, I just want to make a point for the record. An important legal distinction, I misspoke, I'm sorry. It's easy to do. He gets the end of the case file, and that is the search that is improper. That is the search that's objectively unreasonable. Okay, and so on the flip side, he looks at information that's already been seized pursuant to the search warrant. And I will hopefully be able to see the search warrant in the court file. Your Honor, in my preparations for these arguments, I was unable to locate the search warrant. The original search warrant, the second search warrant, I was not the attorney, obviously, at that time. Judge Brown refers to the contents of the search warrant, so I presume that somebody had the search warrant, maybe it was admitted as an exhibit. So at this point, I guess I'll rely on what Judge Brown says, the search warrant says. And I wish I had the warrant for it, Your Honors. In my compiling of the record as the appellate attorney, I included the entire common law record, and I do not believe that either search warrant was included there, unfortunately. Thank you for your time, Your Honor. I'm going to revisit this statement of facts, because I'm sure you're going to walk out of here thinking, why did I drive in a snowstorm all the way to Ottawa to get chewed out by a judge? Let's tell you, you know, back to the practice of giving the appellate appeals to the appellate prosecutor decades ago. And the statement of facts, it's my understanding, that we normally submit a neutral statement of facts to the court. And then you argue the facts in your analysis. I don't see a neutral statement of facts in your brief. And so next time, it would be helpful to me. It would be helpful to me. You know, don't take offense at my comments at all, please. It's merely instructive. Every judge looks at the cases differently. Thank you, Your Honor. Thank you for your arguments here today. This is certainly a very interesting case. The matter will be taken under advisement. I can't promise a swift decision, because it's going to take some time to confirm what justice would be. But we'll render a decision without undue delay.